IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

RICHARD M. ORTEGA,

                **Petitioner,**

vs.                             **No. CIV-10-018 JH/WDS**

JOE R. WILLIAMS, Warden, and
Gary K. King, Attorney General for the
State of New Mexico,

                **Respondents.**

MAGISTRATE JUDGE'S PROPOSED FINDINGS
AND RECOMMENDED DISPOSITION

**THIS MATTER** comes before the Court on Petitioner Richard M. Ortega's ("Ortega" or "Petitioner") Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 by a Person in State Custody with accompanying exhibits filed January 6, 2010 [Doc. 2]; Joe R. Williams, Warden, and Gary K. King, Attorney General for the State of New Mexico's ("Respondents") Answer with accompanying exhibits filed May 4, 2010 [Doc. 19]; and Petitioner's Traverse with accompanying exhibits filed December 14, 2010 [Doc. 36]**.**   This matter further comes before the Court on Petitioner's renewed request in his Traverse for appointment of counsel. [Doc. 36, pp. 2-3; 83, n. 12; 88, 96]. Having considered the Petition and accompanying exhibits, the Answer with accompanying exhibits, the Traverse with accompanying exhibits, the Record Proper, the Transcripts of Proceedings, and the applicable law, this Court recommends that the Petition for Writ of Habeas Corpus be denied on the merits and dismissed with prejudice. Having considered Petitioner's renewed request for appointment of counsel and the applicable law, this Court recommends that Petitioner's request for appointment of counsel be denied. Because the issues are resolved on the

pleadings and the record establishes conclusively that Petitioner is not entitled to relief, an evidentiary hearing is not necessary. *E.g., Schriro v. Landrigan,* 550 U.S. 465, 475 (2007); *Sandoval v. Ulibarri,* 548 F.3d 902, 915-16 (10th Cir. 2008).

**CLAIMS**

This Court must construe *pro se* petitions liberally. *E.g., Erickson v. Pardus,* 551 U.S. 89, 94 (2007); *Hall v. Bellmon,* 935 F.2d 1106, 1110 & n. 3 (10th Cir. 1991). As grounds for federal habeas review, Petitioner raises 29 claims, some with  sub-parts. Claims 1 through 18 were raised and decided on direct appeal to the New Mexico Supreme Court. These claims are generally categorized as insufficiency of evidence; faulty grand jury proceedings, trial court error; and cumulative error, all of which Respondents contend are without merit. Claims 19 through 28 are claims of ineffective assistance of counsel and prosecutorial misconduct that were raised in Petitioner's state habeas petition but were not appealed to the New Mexico Supreme Court.  Respondents contend that these claims are subject to procedural default. Claim 29 is a fundamental fairness and actual innocence claim, which Respondents contend is without merit.

**FACTUAL AND PROCEDURAL BACKGROUND**

On December 30, 1987, a sheriff's deputy found the bodies of Katherine Chavez ("Chavez"), age 21, and Toby Grogg ("Grogg"), age 14, near Westgate Heights in Albuquerque, New Mexico. The females died of multiple stab wounds.  A grand jury indicted Ortega and Raymond L. Gonzales ("Gonzales") and charged them, *inter alia*, with first degree murder, kidnapping, and armed robbery. The two defendants were tried separately, and Gonzales testified in Ortega's trial on behalf of the State under a grant of use and derivative use immunity.

In *State v. Ortega*, 112 N.M. 554, 817 P.2d 1196 (1991), the New Mexico Supreme Court set forth the factual evidence presented to the jury in Ortega's trial which the Supreme Court stated

2

established the following[1]: On December 29, 1987, Ortega and Gonzales, accompanied by Tony

Casaus ("Casaus") and other friends, went to San Gabriel Park in Albuquerque, New Mexico to drink

beer.  While they were at the park, they met Chavez and Grogg for the first time, and the men

believed the girls were rich because they had a brand new Renault, they were both wearing jewelry,

and Chavez was wearing a fur coat.  Ortega told Casaus he wanted to rob the girls and take their car.

The group decided to try to obtain some cocaine, and Ortega and Gonzales left the park with Chavez

and Grogg in the Renault, which Chavez drove.  The entire group went to a house in Westgate

Heights, where Gonzales was staying.  Casaus saw Gonzales remove a knife from a kitchen drawer

and place it in his poncho shortly after Gonzales had been talking with Ortega.  Gonzales and Ortega

then left with Chavez and Grogg in the Renault to obtain some cocaine, with Gonzales seated in the

right rear seat behind Grogg and Ortega in the left rear seat behind Chavez.

Ortega directed Chavez to drive to a nearby house where he purportedly made arrangements

to buy some cocaine; then he directed her to drive to a vacant lot to wait for the delivery.  According

to Gonzales' testimony, once parked, Ortega suddenly drew a knife, grabbed Chavez by the hair, and

pulled the knife across her throat.  Then, with a backhanded motion, he stabbed Grogg. As Ortega

repeatedly stabbed the two females, Gonzales asked Ortega what he was doing and said he wanted

nothing to do with it.  Ortega pulled Chavez into the back seat, leaving blood stains on Gonzales'

clothing, and then Ortega drove the Renault away.  Gonzales got out of the car as soon as he could

and walked back to the house where he was staying.

A witness who lived near the vacant lot had observed the Renault parked in the lot on that

---

[1]Under 28 U.S.C. §2254(e)(1), the factual findings of a state court are presumed correct
and can be overturned by this Court only upon a showing by Ortega of clear and convincing
evidence. *House v. Hatch,* 527 F.3d 1010, 1019 (10th Cir. 2008). Ortega has not offered any
clear and convincing evidence to the contrary, and this Court finds none.

afternoon and she saw a struggle taking place in the back seat.  A man with a dark complexion moved from the back seat to the front driver's seat, the struggle continued, and the man returned to the back seat.  The movement in the back seat stopped and the man returned to the front seat and drove out of the lot.  As the car passed her house, she observed an Hispanic male sitting in the back seat holding something down.

A witness driving in the area of the vacant lot on December 29, 1987 testified that he saw the Renault leaving the area.  He testified that the car was occupied by two Hispanic males, and he identified Ortega as the passenger in the vehicle.

When Gonzales reached the house where he was staying, the Renault was parked on the street in front of the house, and there were bloodstains on the seats.  Gonzales went inside and saw Ortega making arrangements to sell the girls' jewelry in order to obtain cocaine.  In the days following December 29, various witnesses observed Ortega driving the Renault; several of these witnesses said that the back seat appeared to be blood-stained or was covered with a sheet or blanket.  Another witness testified that Ortega came to the witness' motel on the night of December 29 with blood on his hands and clothes, and he told the witness that he and another person had stabbed and robbed two girls.

A forensic pathologist testified as to the nature and extent of the multiple stab wounds on the victims. He also described numerous cuts that were typical of defensive injuries on both victims.  There had been an attempt to remove the ring finger on Grogg's right hand after her death.  All stab wounds were consistent with the knife found at the scene and identified as coming from the house in Westgate Heights where Gonzales was staying.

Ortega testified in his own defense at trial.  He denied participating in the murders, stating that he had been dropped off at his father's house after he, Gonzales, and the two girls had left San

4

Gabriel Park and that he had spent the night there.  He said that he and Gonzales had arranged for Gonzales to steal Chavez's car, after which Ortega was to pick it up and sell it.  He testified that he retrieved the car and had driven it, while making plans to sell it, until he heard about the murders. He then abandoned the car and left for California, where he was later arrested.

Following a jury trial, Ortega was found not guilty of the willful and deliberate murder of either Chavez or Grogg, but guilty of the felony murder of each.  The predicate felonies Ortega was found to have committed during the murder of Chavez were kidnapping and robbery; the predicate felonies in Grogg's case were kidnapping and attempted robbery.  The jury also returned verdicts of kidnapping (great bodily harm), two counts; armed robbery; attempted armed robbery; conspiracy to commit murder (willful and deliberate), two counts; conspiracy to commit kidnapping (great bodily harm), two counts; conspiracy to commit armed robbery, two counts; and conspiracy to commit robbery. Ortega was sentenced to a total of two life sentences to be served consecutively plus 27 years.  In New Mexico, a life sentence is a term of 30 years. NMSA 1978, §31-21-10.

Ortega is in custody of Respondent Joe R. Williams, Warden, pursuant to a Judgment, Sentence and Commitment filed on December 13, 1988 in the Second Judicial District Court, Bernalillo County, Cause No. CR-1988-44752. [Doc. 19, Exh. A].  Ortega is currently confined in the State of Arizona pursuant to the Interstate Compact. For purposes on the "in custody" requirement of 28 U.S.C. §2254, Ortega was in custody at the time of the filing of the Petition on January 6, 2010 and remained in custody as of May 4, 2010, the date of the filing of the Answer. [Doc. 19].

Ortega filed a notice of appeal of his conviction on January 9, 1989 to the Supreme Court of the State of New Mexico [RP 740], and the conviction was affirmed by Opinion filed September 3, 1991 and reported as *State v. Ortega,* 112 N.M. 554, 817 P.2d 1196 (1991). [Doc. 19, Exh. J].  Ortega filed his first Petition for Writ of Habeas Corpus in state court on March 24, 1995 raising claims of

ineffective assistance of counsel, [RP 1101], and an order reinstating the Habeas Corpus Petition was entered on December 11, 2001. [RP 1201]. Ortega filed an Amended Petition for Writ of Habeas Corpus in state court on January 6, 2006, in which he raised eight claims of ineffective assistance of counsel and two claims of prosecutorial misconduct. [RP 1245]. Ortega requested the court to grant his Petition or, in the alternative, to grant his request for an evidentiary hearing. The Petition and request for an evidentiary hearing were denied on August 7, 2009[2]. [Doc. 19, Exh. X].  On September 4, 2009, Ortega filed a Petition for Writ of Certiorari to the New Mexico Supreme Court. [Doc. 19, Exh. Y]. The only ground raised in the Petition was the Court's denial of Ortega's request for an evidentiary hearing for his claims of ineffective assistance of counsel and prosecutorial misconduct. The New Mexico Supreme Court entered an order on September 28, 2009 denying the Petition for Writ of Certiorari. [Doc. 19, Exh. Z]. On January 6, 2010, Ortega filed his federal Petition for Writ of Habeas Corpus. [Doc. 2].

### STANDARD OF REVIEW

Because Petitioner is in custody pursuant to the judgment of a state court, the provisions of 28 U.S.C. §2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), govern this case.  Under AEDPA, relief shall not be granted with respect to any claim

---

[2]In view of Petitioner's 1988 state court conviction and 2010 federal habeas petition, the Court has analyzed whether Petitioner complied with the one year statute of limitations in the AEDPA.  Petitioner filed his state petition in 1995, before the effective date of the AEDPA.  For reasons unknown, that petition remained undecided.  On December 11, 2001 the state court entered an order reinstating the petition.  Again, there was no decision on the state petition, and on January 6, 2006 Petitioner filed an amended petition.  In August 2009 Petitioner's state habeas petition was finally denied.  Less than a month later, Petitioner filed for certiorari with the New Mexico Supreme Court.  Certiorari was denied on September 28, 2009, and this federal petition was filed approximately three months later.  Because the AEDPA's one year statute of limitations was tolled during the fourteen year pendency of the state habeas petition, the federal petition is timely.

that was adjudicated on the merits in State court proceedings unless the petitioner can establish that the State court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. §2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d)(2).

A state court decision is "contrary to" clearly established federal law if it "arrives at a conclusion opposite to that reached by the Supreme Court on a question of law" or "decides a case differently than the Court has on a set of materially indistinguishable facts." *Young v. Sirmons*, 486 F.3d 655, 662-63 (10th Cir. 2007) (quoting *Torres v. Lytle*, 461 F.3d 1303, 1311 (10th Cir. 2006)).

A state court decision is an "unreasonable application" of federal law if it "identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* (quoting *Torres,* 461 F.3d at 1311). "[A] federal habeas court making the unreasonable application inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Penry v. Johnson*, 532 U.S. 782, 793 (2001) (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000)). Even if the federal habeas court concludes that the state court decision applied clearly established federal law incorrectly, relief is appropriate only if that application was also objectively unreasonable. *Id*. In evaluating whether the state court's application of the law was reasonable, federal habeas courts may consider the decisions of the inferior federal courts. *Matteo v. Superintendent, SCO Albion*, 171 F.3d 877, 890 (3rd Cir. 1999) (citing *O'Brien v. Dubois,* 145 F.3d 16, 25 (1st Cir. 1998)).

As discussed, *supra*, relief under the "unreasonable determination of the facts" clause of subsection (d)(2) is subject to the provisions of 28 U.S.C. § 2254(e)(1), which requires that factual findings of a state court are presumed correct and can be overturned by a habeas court only on a

showing by the petitioner of clear and convincing evidence. *House v. Hatch*, 527 F.3d 1010, 1019 (10th Cir. 2008).  State court decisions are entitled to deference even if the state court resolves issues in a summary disposition with little or no legal reasoning. *See Sandoval v. Ulibarri,* 548 F.3d 902, 911 (10th Cir. 2008); *Paine v. Massie,* 339 F.3d 1194, 1198 (10th Cir. 2003).

## ANALYSIS

Claims 19 through 28: Ineffective Assistance of Counsel and Prosecutorial Misconduct and Claim 29: Innocence.

Claims 19 through 28 of the federal Petition raise eight claims of ineffective assistance of counsel and two claims of prosecutorial misconduct.  These are the identical claims that Ortega previously raised in his Amended Petition for Writ of Habeas Corpus in state court. [RP 1245].  As discussed in detail, *supra*, these claims were denied by the district court, and they were not raised in Ortega's Petition for Writ of Certiorari to the New Mexico Supreme Court.  The only issue raised in the Petition for Writ of Certiorari was the district court's denial of Ortega's request for an evidentiary hearing. Respondents argue that Ortega's claims 19 through 28 are procedurally defaulted because he did not exhaust his state court remedies regarding these claims by failing to include them in his Petition for Writ of Certiorari.[3]

A petitioner for relief under 28 U.S.C. §2254 must first exhaust the remedies available in state court.  *See* 28 U.S.C. §2254(b)(1)(A) and (C); *see also Bland v. Sirmons*, 459 F.3d 999, 1011 (10th Cir. 2006). To satisfy this requirement, the petitioner must "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established

_____

[3]Petitioner claims that he cannot intelligently or comprehensively reply to the issue of procedural default because he has no access to New Mexico state law or federal case law. [Doc. 36, p. 2].  Petitioner's contention is not well taken as Petitioner's 97 page Traverse is replete with cites to federal law and relevant state law. However, this Court has conducted an independent review and analysis of the procedural default issue.

appellate review process." *O'Sullivan v. Boerckel,* 526 U.S. 838, 845 (1999).  Generally, when a petitioner has failed to exhaust state court remedies, a federal court should dismiss the petition without prejudice to give the petitioner an opportunity to exhaust those remedies.  *See Demarest v. Price,* 130 F.3d 922, 939 (10th Cir. 1997).  "However, in considering unexhausted claims, federal courts should consider whether, upon dismissal of the claims, the petitioner would then be able to raise them in the state courts." *Id.* "[I]f the court to which Petitioner must present his claims in order to meet the exhaustion requirement would now find those claims procedurally barred, there is a procedural default for the purposes of federal habeas review." *Dulin v. Cook,* 957 F.2d 758, 759 (10th Cir. 1992) (citing *Coleman v. Thompson,* 501 U.S. 722, 735 n.1 (1991)).

As discussed, *supra,* Ortega failed to raise his ineffective assistance of counsel and prosecutorial misconduct claims set forth in his state amended habeas corpus petition in his Petition for Writ of Certiorari to the New Mexico Supreme Court.  Accordingly, these claims are procedurally defaulted.  *See Watson v. New Mexico,* 45 F.3d 385, 387 (10th Cir. 1995) (noting that procedural default occurred where certiorari review was not sought from denial of state habeas petition); *Maes v. Thomas*, 46 F.3d 979, 985-986 (10th Cir. 1995) (noting the New Mexico rule that issues abandoned on direct appeal are deemed defaulted); *Ballinger v. Kerby,* 3 F.3d 1371, 1374 (10th Cir. 1993) (finding petitioner's claims procedurally defaulted for failure to obtain timely review by the New Mexico Supreme Court).

A federal court will consider procedurally defaulted claims only if the petitioner can demonstrate cause and prejudice for the default or demonstrate that application of the rule would cause a fundamental miscarriage of justice. *See Smallwood v. Gibson,* 191 F.3d 1257, 1268 (10th Cir. 1999). In order to show cause for a procedural default, Petitioner must show that some objective factor external to the defense impeded his efforts to raise the defaulted claims in state court.  *Maes*

*v. Thomas*, 46 F.3d at 987. Objective factors that constitute cause include interference by officials making compliance with the procedural rule impracticable or a showing that the factual and legal basis of the claim was not reasonably available.  *Id.*   In the context of procedural default, a "fundamental miscarriage of justice" involves extraordinary circumstances when a constitutional violation probably has caused the conviction of one innocent of the crime.  *McCleskey v. Zant,* 499 U.S. 467, 502 (1991).

Ortega has failed to show cause and prejudice for the procedural default, and none exists. Ortega raised the issue of the state district court's denial of his request for an evidentiary hearing in his Petition for Writ of Certiorari, and nothing prevented him from raising his other claims as well. No objective fact external to his defense impeded his efforts to raise these defaulted claims nor does he allege any.

Ortega argues, however, that he can demonstrate that application of the procedural default rule would result in a fundamental miscarriage of justice. In his Traverse, Ortega asks this Court to consider his procedurally defaulted claims under the "gateway" innocence analysis set forth in *Schlup v. Delo*, 513 U.S. 298 (1995) based on DNA testing he had done in 2008. He claims that the results of the DNA testing, discussed in detail, *infra*, undermines any reliability of the jury's verdict and is sufficient to invoke the fundamental miscarriage of justice exception to procedural default.[4]

---

[4]In his Petition, Ortega alleges a freestanding claim of actual innocence in which he alleges that the results of his October 13, 2008 DNA test show that he is actually innocent of the crimes. [Doc. 3, pp. 26-27].  However, Ortega appears to abandon this claim in his Traverse and rather asks the Court to consider his alleged innocence only in connection with excusing any procedurally defaulted claims. [Doc. 36].  To the extent that Ortega may be continuing to allege a freestanding claim of actual innocence, that claim is not cognizable in a federal habeas procedure, absent a capital case. *See, e.g., LaFevers v. Gibson,* 238 F.3d 1263, 1265 n.4 (10th Cir. 2001) ("Furthermore, an assertion of actual innocence, although operating as a potential pathway for reaching otherwise defaulted constitutional claims, does not, standing alone, support the granting of the writ of habeas corpus.")(citing *Herrera v. Collins,* 506 U.S. 390, 400 (1993)).

There are a narrow class of cases in which, in order to avoid a fundamental miscarriage of justice, evidence of a petitioner's actual innocence can excuse his procedural default so that the federal court can consider the procedurally defaulted claims. *See, e.g., McCleskey v. Zant*, 499 U.S. at 494. A case in which a petitioner seeks to excuse his procedural default by advancing a claim of innocence is known as a "gateway" case. *See, e.g., Albrecht v. Horn,* 485 F.3d 103 (3rd Cir. 2007). In these cases, the petitioner's claim of innocence is "not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Schlup*  513 U.S. at 315 (citations omitted). When the evidence is so strong that a court cannot have confidence in the outcome of the trial, that outcome cannot stand "unless the court is also satisfied that the trial was free of nonharmless constitutional error." *Id*. at 316.

In a "gateway" innocence case, a Petitioner must first present new, reliable evidence that was not presented at trial.  *Id*. at 324.  Then, a petitioner must show "that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Id*. at 327. The federal court is required to "assess how reasonable jurors would react to the overall, newly supplemented record." *House v. Bell,* 547 U.S. 518, 538 (2006). Under this inquiry, the court "must consider what reasonable triers of fact are likely to do." *Schlup v. Delo,* 513 U.S. at 330. If Petitioner meets the *Schlup* requirements, then the Court can consider the defaulted claims.

Ortega offers this Court his October 13, 2008 DNA test results to fulfill the first requirement that he present new, reliable evidence that was not presented at trial.  This Court finds that Ortega meets this requirement as the DNA testing was conducted in 2008 by Orchid Cellmark, a laboratory

---

Ortega's case is not a capital case.

accredited by the American Society of Crime Laboratory Directors/Laboratory Accreditation Board, and these lab results were not available or presented at trial. [Doc. 19-20, Exh. AA].

This Court concludes, however, that Ortega fails to meet the second requirement that "it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Schlup v. Delo*, 513 U.S. at 327. The Report of Laboratory Examination ("Report") regarding Petitioner's DNA test results shows that Orchid Cellmark received 16 items for examination on August 15, 2007 that included a blue cloth strap, button, button with thread, right and left rear car floor mats, two sweaters, two bras, towel, overalls, panties, fur coat, hairs from sweater and bra, hairs from pants and underpants, and hairs and fur standard from fur coat. [Doc. 19-20, Exh. AA]. All items were examined except the hairs from the sweater and bra, the hairs from pants and underpants, and the hairs and fur standard from the fur coat. The serology results showed that presumptive testing for blood was positive on all items tested except the panties. A DNA profile was obtained from only three items--the two sweaters and the overalls. The DNA profiles obtained were from two unknown females. The Conclusions in the Report state:

FR07-0119-06.01.5
The DNA profile obtained from the cutting of the sweater is a mixture. The major profile is consistent with originating from unknown female #1 and the minor alleles are consistent with unknown female #2.

FR07-0119-08.01.4
The DNA profile obtained from the swabbing of the sweater is consistent with originating from unknown female #2.

FR07-0119-11.01.4
The predominant DNA profile obtained from the cutting of the overalls is consistent with originating from unknown female #2. No conclusions can be reached regarding the presence of additional types in this sample.

Ortega contends that these results meet the second requirement set forth in *Schlup*. He argues that he has always maintained that he was not present when the two girls were killed and that the

2008 test results conclusively exclude him from the samples that were tested.[5]  He alleges that it would be impossible for Gonzales and/or his accomplice not to leave DNA behind under any scenario of the killings, the forensic evidence adduced at trial, and the sheer violence of the stabbings inside the tight confines of the interior of the victim's car. Ortega also notes that the prosecution argued that he had sustained a 3/4 inch laceration to the center of his forehead in the altercation, and, therefore, he would have left blood somewhere on the victims, their clothing, or inside the car. Ortega claims that the limited exculpatory effect of the Report undermines any reliability of the jury's verdicts or, at the very least, mandates further DNA testing.  He states that his *Schlup* claim is sufficient to warrant further factual development procedures.[6]

This Court disagrees.  Combining these test results with the evidence provided to the jury at trial outlined in the Factual and Procedural Background section, *supra,* falls well short of convincing this Court that "it is more likely than not that no reasonable juror would have convicted [Ortega] in light of" this evidence. The "new" DNA evidence presented by Ortega simply confirms that three individual bloodstains from a bloody crime scene contained blood from two females, presumably the two female victims.  No DNA, male or female, was found in the majority of the bloodstains tested.

---

[5]Ortega states that because of his family's meager finances, the 2008 tests were limited to the physical evidence Ortega's then retained forensics expert determined would most likely yield test results that either exculpated or inculpated Ortega.

[6]Ortega claims that comprehensive DNA testing is necessary in his case and in the absence of a conditional release, he asks this Court, *inter alia*, to order complete comprehensive DNA testing. This Court declines to do so. The State of New Mexico has enacted NMSA 1978 §31-1A-2 which provides post-conviction procedures for DNA testing, and no federal constitutional right exists for DNA testing. *See generally, District Attorney's Office for the Third Judicial District et al. v. Osborne*, 129 S.Ct. 2308 (2009) (where the United States Supreme Court held that even assuming Petitioner's claims regarding DNA testing could be pursued, he had no constitutional right to obtain post-conviction access to the State's evidence for DNA testing.)

The absence of Petitioner's DNA in three drops of blood from the crime scene does not establish that his DNA was absent from crime scene. Indeed, Petitioner admitted that he was in the car with the two victims before the murders, and that he drove the blood stained vehicle after the murders, so there was never a question that he was in the car. The prosecution's argument that Petitioner sustained a 3/4 inch laceration on his forehead during the commission of the crime in 1987 does not mean that Petitioner's DNA would have appeared in one or all of the three bloodstains that tested positive for DNA in 2008. Finally, the 2008 testing discovered *no male DNA whatsoever,* refuting Petitioner's assertion that the violence of the murders made it "impossible" for Gonzalez and his accomplice not to leave DNA behind. In the Court's opinion the DNA testing conducted on Petitioner's behalf in 2008 is inconclusive at best, and therefore of no evidentiary value.

The absence of Ortega's DNA on three articles of clothing would have been wholly insufficient to sway a reasonable juror to have found in Ortega's favor, especially in light of the eyewitness evidence adduced at trial that placed Petitioner in the vehicle near the scene of the crime, and testimony that described him, with bloody hands and clothing, confessing to another witness several hours after the murders that he had stabbed and robbed two girls. It is also important to note that Ortega was convicted of felony murder, which does not necessitate that he actually killed the victims.

In the Court's opinion, if reasonable jurors were presented with the evidence adduced at trial, plus the new DNA results, i.e., that three discrete bloodstains from the crime scene did not contain Petitioner's DNA, the trial would result in the same outcome, conviction of the Petitioner. The new evidence does not warrant invocation of the fundamental miscarriage of justice exception to procedural default. Accordingly, Ortega is barred from raising claims 19 through 28 in his federal habeas petition, and Claims 19 through 28 and Claim 29 should be dismissed.

14

Claim 4: Trial Court's allowance of cross-examination of Petitioner regarding prior bad acts, specific instances of conduct, convictions, and arrests.

Ortega testified on direct examination about various "brushes with the law" he had as an adult, which included a conviction and an arrest for stealing cars, a conviction for transporting marijuana, and an arrest for a DWI charge. [TR VII, 1147-1148]. He also testified that he had stolen about 50 cars. [TR VII, 1149]. On cross-examination, the prosecutor sought leave to explore additional "brushes with the law." Overruling defendant's objection, the trial court stated:

> I think you opened the door wide open when you started going into all his crimes....I don't think the defense can bring in what they want to and pick and choose prior crimes as they see fit and hold out others. [TR VII, 1233].

On appeal, the New Mexico Supreme Court held, *inter alia,* that the trial court did not abuse its discretion as to the scope of the cross-examination.

Ortega's only allegation in Claim 4 of his federal Petition is that his co-counsel, who was examining him, was not fully aware of the facts of the case and, therefore, committed the error of "opening the door" for the prosecution to question him about additional "brushes with the law." Ortega alleges that ineffective assistance of counsel applies. Claim 4 is identical to Claim 25 of Ortega's Petition, which also presents an ineffective assistance of counsel claim regarding the same allegations.[7] As discussed in detail, *supra,* this Court recommends that Claim 25 be dismissed as procedurally barred. Accordingly, this Court recommends that Claim 4 be dismissed.

Claim 7: Trial Court's failure to suppress statement made by Petitioner that victims were not raped.

A witness for the State testified that while obtaining body samples from Ortega, Ortega

---

[7]Claim 25 alleges that Ortega's trial co-counsel was ineffective by presenting evidence to the jury of his prior crimes which opened the door for the prosecution to question him about other "brushes with the law."

questioned the need for a sample of his pubic hair since no rape occurred.  Defense counsel moved to exclude this statement under SCRA 1986, 11-403. [TR III, 519-525]. The trial court admitted the testimony, holding that exclusion was not required under Rule 403, but the court offered to permit defense counsel to testify, either in person or by affidavit, that it was he who had told Ortega that the victims had not been sexually assaulted. [TR III, 524-525]. Defense counsel did neither, and Ortega did not testify that he obtained the information from another source.

In his Petition, Ortega contends that although his counsel indicated that he would submit an affidavit to be read to the jury, he did not do so. Because of this, the jury was allowed to hear the extremely prejudicial statement without Ortega having the opportunity to explain it. Ortega states that the Sixth Amendment guarantees effective assistance of counsel, and he alleges that it was the failure of his defense counsel to submit the affidavit that caused him prejudice because the jury could make the inference that he had personal knowledge of whether the victims had been raped.

The above allegations outlined in Claim 7 present an ineffective assistance of counsel claim, and are, in fact, identical to the allegations set forth in Ortega's Claim 26, which alleges ineffective assistance of counsel.[8]  As discussed in detail, *supra,* Ortega's ineffective assistance of counsel claims are procedurally defaulted and should be dismissed.  Accordingly, Claim 7 of Ortega's Petition should be dismissed.

Claim 1: Insufficient evidence to support the kidnapping conviction of Grogg

In challenging his conviction for kidnapping Grogg, Ortega makes two claims regarding insufficiency of evidence. The Court will address the factual and procedural basis for each claim in

---

[8]Claim 26 alleges ineffective assistance of counsel for defense counsel's failure to submit an affidavit stating that he had informed Ortega that no sexual assaults had occurred against the victims and that this failure by his counsel allowed the jury to hear the extremely prejudicial statement without Ortega having the opportunity to explain it.

turn and then apply the applicable law.

(A) Merger of convictions for kidnapping and murder of Grogg

The trial court imposed consecutive sentences for the kidnapping of Grogg and for the murder of Grogg. Ortega contends that the convictions for the kidnapping and murder should be deemed to merge because the facts used to establish the elements of both crimes were identical. Ortega alleges that it was the victims that initiated a request for cocaine and that Grogg went voluntarily to the field where the car was parked at the time of the stabbings. Ortega further argues that any restraint of Grogg was merely incidental to the stabbings.  He contends that the forensic pathologist testified that Grogg died from stab wounds and that there was no evidence of physical restraint.

On appeal, the New Mexico Supreme Court applied the following two-part test for merger: "whether the conduct underlying the offenses is unitary, *i.e.*, whether the same conduct violates both statutes," and "whether the legislature intended to create separately punishable offenses." *State v. Ortega*, 112 N.M. at 571, 817 P.2d at 1213 (citing *Swafford v. State,* 112 N.M. 3, 810 P.2d 1223 (1991). The New Mexico Supreme Court ruled that the facts used to establish the elements of the two separate offenses were not identical; therefore, the first prong of the merger test was not met. *Id.* The Supreme Court stated that Ortega's argument that Grogg was not restrained at the time of the stabbings ignored the forensic pathologist's testimony that some of Grogg's forty-two stab wounds were typical of defensive injuries. Under these facts, the jury could infer that Grogg did not die immediately but rather fought off her attacker and was restrained while doing so. The Supreme Court also ruled that under the evidence in the case, a jury could have found that the kidnapping occurred prior to the attack because Ortega tricked Grogg and Chavez into believing that a cocaine delivery would be made after they reached the field.  Grogg was therefore restrained by deception within the contemplation of the kidnapping statute.

17

<u>(B) Insufficient evidence to show Grogg was restrained by force to support kidnapping conviction</u>

Ortega argues that his conviction for kidnapping cannot stand because the jury was instructed that in order to convict him of kidnapping, the state must prove that Ortega "took, restrained or confined Grogg by force or deception." Ortega argues that where the jury is instructed on alternative grounds, a general verdict of guilty with respect to that crime must be set aside where it can be supported on only one of the alternative grounds, and it is impossible to tell which ground the jury selected. Ortega argues that although the jury could infer from the evidence that Grogg was deceived into believing they were waiting for a cocaine delivery,[9] there was insufficient evidence for a jury to infer that Grogg was restrained by force. Ortega contends that because it is impossible to determine which alternative (restraint by force or deception) the jury relied upon, his conviction must be set aside.

The New Mexico Supreme Court rejected Ortega's argument and upheld his conviction for the kidnapping of Grogg stating that it had already ruled that there was sufficient evidence for the jury to conclude that Grogg was forcibly restrained as well as sufficient evidence that she was restrained by deception.

<u>Applicable law and analysis</u>

Ortega's constitutional challenge to the sufficiency of the evidence is governed by *Jackson v. Virginia*, 443 U.S. 307 (1979). Under *Jackson,* evidence is sufficient to support a conviction as a matter of due process if "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (emphasis in the original). This standard reflects the longstanding principle that

---

[9]Ortega admits, apparently for the first time, that the jury could infer from the evidence that Grogg was deceived into believing they were waiting for a cocaine delivery. [Doc. 3, p. 12].

"it is the jury's province to weigh the evidence and to draw reasonable inferences from testimony presented at trial." *Turrentine v. Mullin,* 390 F.3d 1181, 1197 (10th Cir. 2004).  The Court "may not weigh conflicting evidence nor consider the credibility of witnesses," but must "accept the jury's resolution of the evidence as long as it is within the bounds of reason." *Messer v. Roberts,* 74 F.3d 1009, 1013 (10th Cir. 1996)(citation omitted). Therefore, this Court's review under this standard is "sharply limited" and a court "faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear in the record -- that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.*

In analyzing whether the *Jackson* sufficiency standard has been met, this Court considers the relevant New Mexico law discussed, *supra,* as well as the trial transcript.  The Court finds that the testimony from the forensic pathologist discussed, *supra,* is sufficient for "any rational trier of fact" to conclude that Grogg was restrained by force while attempting to defend herself from the numerous stab wounds inflicted upon her. [TR VI,1010-1102]  Accordingly, the merger doctrine does not apply. The Court also finds, and Ortega admits, that sufficient evidence existed in the record for "any rational trier of fact" to conclude that Grogg was restrained by deception because Ortega tricked Grogg and Chavez into believing that a cocaine delivery would be made after they reached the field. [Doc. 3, p. 12].

Ortega has failed to show that the State courts' decisions were "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. §2254(d)(1), or were "based on an unreasonable determination of the facts in light of the evidence." 28 U.S.C. §2254(d)(2). Ortega is not entitled to federal habeas relief on Claim 1.

Claim 2: Insufficient evidence of "holding for service" to allow the jury to consider kidnapping

19

In Claim 2, Ortega alleges that insufficient evidence existed for the jury to find that he held the victims for service against their will, as required by New Mexico's kidnapping statute, NMSA 1978, §30-4-1(A) (Repl.Pamp. 1984). He claims that there was no evidence that the victims were made to submit their wills to the direction and control of another for the purpose of assisting or benefitting someone[10] because it was the victims who wanted cocaine, who had control of their vehicle at all times, and who could have left the situation at any time. On appeal, the New Mexico Supreme Court ruled that the jury could properly find that Chavez and Grogg was held to service against her will.

As discussed in detail, *supra,* in reviewing a federal habeas claim for sufficiency of the evidence to convict, the relevant questions is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S.at 318-319.

The jury was instructed that in order to find Ortega guilty of kidnapping, the state must prove the following elements of the crime: (1) Ortega took, restrained or confined each victim by force or deception; (2) Ortega intended to hold each victim for service against her will; and (3) Ortega inflicted great bodily harm on each victim. [RP III, 612, 615]. In its opinion, the New Mexico Supreme Court noted that neither the kidnapping statute nor any New Mexico case defines the phrase

---

[10]The Court has interpreted Petitioner's pleadings liberally here, as it is required to do. Petitioner's brief stated there was no evidence that he "made to submit the will of direction and control of the victims for the purpose of performing some act." It is apparent to the Court that Petitioner was inartfully citing the burden of proof under New Mexico's kidnapping statute, i.e., "Mere incidental restraint and movement of a victim which might occur during the course of a homicide are not, standing alone, indicia of a true kidnapping under 30-4-1 NMSA 1978; there must be evidence that the victim was made to submit his or her will to the direction and control of another for the purpose of assisting or benefitting someone or something." State v. Vernon, 116 N.M. 737, 867 P.2d 407 (1993), cert. denied, 531 U.S. 1039, 121 S. Ct. 630, 148 L. Ed. 2d 539 (2000).

"held to service against the victim's will." *State v. Ortega*, 112 N.M. at 569, 817 P.2d at 1211. However, the New Mexico Supreme Court noted that none of the words is unusual or difficult to understand and stated, "[w]e cannot agree that their combination in the order shown conveys an unusual meaning which the public cannot comprehend." *Id.* at 570 (quoting *State v. Aguirre*, 84 N.M. 376, 381-382, 503 P.2d 1157, 1159-1160 (1972). Utilizing Webster's Third New International Dictionary 2075 (1961), the *Ortega* court held that the common meaning of "held to service against the victim's will" is that one is held to service when he or she is made to submit his or her will to the direction and control of another for the purpose of accomplishing some goal that the perpetrator may view as beneficial to himself or herself. *Id.*

Viewing the evidence in the light most favorable to the prosecution and according deference to the state courts' decisions and the New Mexico Supreme Court's statutory interpretation, this Court concludes that a rational trier of fact could have found that the victims were held for service to benefit Ortega. This Court agrees with the New Mexico Supreme Court that a rational trier of fact could find that both victims were induced by the deception of obtaining cocaine to accompany Ortega to a remote location to carry out their overall plan. The service provided by Chavez was driving them to the location. Grogg's presence benefitted Ortega because any refusal on her part to accompany them could have thwarted their plan. *See generally State v. Ortega*, 112 N.M. at 571, 817 P. 2d at 1261. Ortega has failed to establish that the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law," or "was based on an unreasonable determination of the facts in light of the evidence"; therefore, Ortega's Claim 2 should be denied.

Claim 5: Trial Court's submission of jury instructions allowing felony murder.

In Claim 5 of his Petition, Ortega alleges the following three errors regarding felony murder: first, that the felony murder charges should have been dismissed on grounds of violation of due

process, equal protection, fair trial, and effective assistance of counsel; second, that the felony murder rule operates as a conclusive presumption and violates due process and the right to a fair trial; and third, that the felony murder convictions should have been set aside because convictions for strict liability crimes are in violation of due process and cruel and unusual punishment. In Ortega's Traverse, however, Ortega abandons the first and third alleged errors outlined above and states that Claim 5 arises only from the second error. [Doc. 36-2, p. 24]. Under this alleged error, Ortega contends that New Mexico's general intent jury instruction given to the jury is an evidentiary presumption that had the effect of relieving the State of its burden of proof of the essential element of Ortega's criminal intent for his robbery and kidnapping charges.[11]  He claims that through the general intent jury instruction, the jurors were "given the command to presume the criminal intent of those first degree felonies..." and, accordingly, his convictions were unconstitutional. [Doc. 36-2, p. 80].Ortega further claims that although this argument was specifically raised by him on direct appeal, the New Mexico Supreme Court failed to adjudicate it, and, therefore, this Court must conduct a *de novo* review of his claim.

This Court has reviewed the briefing submitted by Ortega in his direct appeal regarding Claim 5 in his federal Petition.  Ortega misstates the issue he submitted to the New Mexico Supreme

---

[11] The general intent jury instruction given in the Ortega case states:
In addition to the other elements of Armed Robbery, Kidnapping, Conspiracy, Attempted Armed Robbery and False Imprisonment, the State must prove to your satisfaction beyond a reasonable doubt that the defendant acted intentionally when he committed the crime. A person acts intentionally when he purposely does an act which the law declares to be a crime, even though he may not know that his act is unlawful.  Whether the defendant acted intentionally may be inferred from all of the surrounding circumstances such as manner in which he acts, the means used, his conduct and any statements made by him." [RP III, 630]. NMRA, Crim. UJI 14-141.

Court. The argument before the New Mexico Supreme Court alleged that the interplay of various jury instructions, including 14-131 (great bodily harm); 14-141 (general intent); 14-404 (kidnapping); 14-202 (felony-murder); 14-1621 (armed robbery); and 14-6001 (duty to follow instructions as a whole), sets up a conclusive presumption that Ortega was guilty of first degree murder. [Doc. 19-4, Exh. G]. No argument was raised before the Supreme Court that the general intent jury instruction alone created the alleged presumption.[12]

However, this Court notes that the New Mexico Supreme Court thoroughly analyzed various instructions given to the jury and held that despite some theoretical defects, the validity of the convictions was not impaired and the jury was given instructions that adequately informed it of the governing law. *State v. Ortega*, 112 N.M. at 569. Ortega's Claim 5 fails, and it should be dismissed.

<u>Claim 8: Trial Court's failure to suppress photographic identification of Petitioner by a witness and allowing subsequent in-court identification of Petitioner by the witness.</u>

A witness who testified he had seen Ortega in Chavez's car on December 29 near the scene of the murders had previously identified Ortega from a photo array after preparing a sketch that may not have resembled Ortega's photograph. Ortega contends that this photographic identification was impermissibly suggestive and completely unreliable because he did not resemble the drawing, and, therefore, his photograph should not have been used in the array. The trial court found that "there

---

[12]To the extent Ortega is attempting to raise a new claim, as discussed in detail, *supra,* a petitioner for relief under 28 U.S.C. §2254 must first exhaust the remedies available in state court. *See* 28 U.S.C. §2254(b)(1)(A) and (C); *see also Bland v. Sirmons*, 459 F.3d at 1011. Petitioner failed to raise this claim in his direct appeal; accordingly, his claim is procedurally defaulted as he could not return to state court to now present this alleged error. *See, e.g., Ballinger v. Kerby,* 3 F.3d at 1374. Ortega also has failed to show cause and prejudice to excuse the procedural default, and this Court finds that none exists. Nothing prevented Ortega from raising this claim in his direct appeal. *See Smallwood v. Gibson,* 191 F.3d at 1268. Neither does Ortega show nor does the Court find any extraordinary circumstance which would establish a fundamental miscarriage of justice if the rule is applied. *Id.* Accordingly, the Court will not consider this claim.

was nothing about the sketch or anything else that rendered the photo array impermissibly suggestive," and on appeal, the New Mexico Supreme Court agreed. *State v. Ortega*, 112 N.M. at 574, 817 P.2d at 1216.

"When the constitutionality of a photo array is challenged, the due process clause requires a two-pronged inquiry: first, the court must determine whether the photo array was impermissibly suggestive, and if it is found to be so, then the court must decide whether the identifications were nevertheless reliable in view of the totality of the circumstances." *United States v. Sanchez*, 24 F.3d 1259, 1261–1262 (10th Cir.1994) (citations omitted). The Court is to analyze these two prongs separately, and the second prong need be reached only if the court first determines that the array was impermissibly suggestive. *Id.* at 1262 (citation omitted). In determining whether a photo lineup is unduly suggestive, the Court must consider a number of factors, including the number of pictures in the lineup, the manner of its presentation by law enforcement, and the details of the pictures themselves. *Id.* at 1262.

As discussed, *supra,* Ortega argues that the photo array was suggestive because his photograph should not have been in the array because he did not resemble the sketch prepared by the witness.[13] He makes this claim with no legal support. The trial court held an extensive hearing

---

[13]For the first time in his Petition, Ortega alleges that the array was suggestive because the detective who presented the photo array to the witness was good friends with Ortega's girlfriend's father, who was a federal agent. Because his girlfriend's father did not approve of their relationship, the detective was given free reign to conduct any means necessary to obtain information to convict Ortega. If Ortega is attempting to raise a new claim, as discussed in detail, *supra,* a petitioner for relief under 28 U.S.C. §2254 must first exhaust the remedies available in state court. *See* 28 U.S.C. §2254(b)(1)(A) and (C); *see also Bland v. Sirmons*, 459 F.3d at 1011. Petitioner failed to raise this claim in his direct appeal; accordingly, his claim is procedurally defaulted. *See, e.g., Ballinger v. Kerby,* 3 F.3d at 1374. Ortega also has failed to show cause and prejudice to excuse the procedural default, and this Court finds that none exists. Nothing prevented Ortega from raising this claim in his direct appeal. *See Smallwood v. Gibson,* 191 F.3d at 1268. Neither does Ortega show nor does the Court find any extraordinary circumstance

regarding the issue surrounding the photo array prior to trial, which included testimony from the witness who identified Ortega from the array as well as the detective who presented it to him. [PT I, 137-232]. The transcript of the hearing shows that two photo arrays were presented to the witness, with six photographs in at least the second array.  The witness could not identify the person he saw in the car from the first array, but he identified Ortega from the second array. This undisputed testimony shows that a significant amount of photos were shown to the witness. The undisputed testimony also shows that there was nothing suggestive about the way the identification procedure was conducted. The witness was presented with each array in turn and asked to look at the photos and, if possible, identify the person he saw in the car. Under these  facts, this Court finds nothing unconstitutionally suggestive about the photo array.  Because this Court finds that the photo array was not impermissibly suggestive, it need not reach the question of whether the identifications were reliable in view of the totality of the circumstances. *United States v. Sanchez*, 24 F.3d at 1262.

Ortega provides no argument and points to no evidence that could serve to rebut the state court's finding that the photo array was impermissibly suggestive, and this Court finds none. Accordingly, Claim 8 of Ortega's Petition should be dismissed.

Claims 9 and 10

Ortega's claims 9 and 10 allege faulty grand jury proceedings.  The deficiencies Ortega alleges in these claims are that he did not receive target notice of the proceedings; that prosecutorial misconduct and bad faith existed, and that exculpatory evidence was not presented to the grand jury.

Ortega's claims 9 and 10 fail because alleged deficiencies in grand jury proceedings are not

---

which would establish a fundamental miscarriage of justice if the rule is applied.  *Id.*
Accordingly, the Court will not consider this claim.

cognizable in a habeas corpus proceeding in federal court.[14] *Davis v. Mantello,* 42 Fed. Appx. 488, 490 (2d Cir. 2002)(citations omitted); *Gallegos v. Bravo,* CIV 10-0372 JB/KBM (D.N.M. March 31, 2011)**;** *Pena v. Fischer,* 2003 WL 199903331 at *8 (S.D.N.Y. Apr. 30, 2003) ("Claims regarding state grand jury proceedings raise no federal constitutional issues.") Furthermore, the Court recognizes that "[I]ndictment by grand jury is not part of the due process of law guaranteed to state criminal defendants by the Fourteenth Amendment." *Branzburg v. Hayes*, 408 U.S. 665, 688 n.25 (1972); *see also Clanton v. Cooper,* 129 F.3d 1147, 1155 (10th Cir. 1997)(noting that the Fifth Amendment right to a grand jury indictment has never been incorporated via the Fourteenth Amendment as a substantive restriction on state criminal procedure).  Accordingly, Ortega's claims 9 and 10 should be dismissed.

Claims 3, 6, 11, 12, 13, 14, 15 16

A number of Ortega's claims primarily allege matters of New Mexico state law with most of these claims concerning evidentiary and discretionary rulings of the state court judge. A federal habeas court is not to re-examine determinations made by state courts on state law questions.  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (citations omitted).  Rather, a federal habeas court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. *Id*; *see Shipley v. State of Oklahoma*, 313 F.3d 1249, 1251 (10th Cir. 2002) ("[f]ederal habeas review does not extend to the correction of purely state law procedural errors that do not rise to the level of a constitutional due process violation...."). However, it is undisputed that "[t]he right to a fair trial is a fundamental liberty secured by the Fourteenth Amendment." *Estelle v. Williams*, 425 U.S. 501, 503 (1976) (citation omitted).  The Tenth Circuit has ruled that federal courts may not interfere with state

---

[14]One exception may be racial discrimination in the selection of grand jury members. *Rose v. Mitchell*, 443 U.S. 545, 560-561 (1979).

evidentiary rulings unless the rulings in question rendered "the trial so fundamentally unfair that a denial of federal constitutional rights results." *Gilson v. Sirmons,* 520 F.3d 1196, 1242 (10th Cir. 2008) (internal quotation omitted).

Ortega's claims 3, 6, 11, 12, 13, 14, 15 16, discussed in detail, *infra,* primarily allege violations of state law. The New Mexico Supreme Court addressed each of these claims separately in Ortega's direct appeal and held that each of them lacked in merit. *See State v. Ortega*, 112 N.M. at 572-575, 817 P.2d at 1214-1217. The Supreme Court noted that most of these issues question the trial court's exercise of discretion, and the Supreme Court held that in all such instances, the trial court did not abuse its discretion. *Id.* at 572. As set forth, *supra*, this Court is to give deference to state court decisions; however, the Court must determine whether any decision rendered "the trial so fundamentally unfair that a denial of federal constitutional rights results." *Gilson v. Sirmons,* 520 F.3d at 1242.

As to each of these claims, Ortega states that he is unable to argue that a particular state law error implicates a specific constitutional provision because he has no access to federal law. Ortega makes this claim despite his citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974) for the proposition that "when an error of state law so infects the trial with unfairness as to make the resulting conviction a denial of due process, the Constitution of the United States has been violated, making that state law error amenable to federal habeas relief." [Doc. 36, p. 16]. As discussed, *supra*, Ortega's Traverse is replete with cites to federal law, and his argument regarding access to law is, therefore, not well taken. Additionally, Ortega's claims are insufficient because they are generally vague and conclusory, lacking in both facts and law. *See Hall v. Bellmon,* 935 F.2d at 1110; *see also Ruark v. Gunter,* 958 F.2d at 319.  Ortega has failed to show how these alleged errors rendered his trial fundamentally unfair. Ortega's claims should be dismissed for these reason alone.  However, this

Court has conducted an independent review of each claim set forth below and finds that the claims are without merit and should be dismissed.

Claim 3: Trial Court's failure to admit Gonzales' penitentiary psychological report as impeachment evidence.

During cross-examination of Gonzales, defense counsel requested the trial court's permission to impeach Gonzales with specific instances of misconduct, including gang activity and a history of alcohol-related violence. [TR V, 878]. Evidence of such instances of misconduct was obtained from statements Gonzales made during a psychological evaluation conducted by a psychologist at the state correctional institution and the report resulting therefrom. The trial court permitted cross-examination on the specific instances of conduct outlined in the report, [TR V, 884] but Gonzales denied having been involved in gang activity or having a history of alcohol-related violence. [TR V, 888].

Petitioner's defense counsel then attempted to introduce the psychological report to impeach Gonzales. [TR V, 890]. The trial court held an *in camera* hearing with the psychologist and ruled that the report was privileged under the psychotherapist-patient privilege under SCRA 1986, 11-504. [TR VII, 1330-1337]. The trial court relied in part on the psychologist's testimony in chambers that Gonzales' statements were intended to be confidential and that their disclosure would be inimical to his future treatment. The trial court also ruled that the inconsistency between Gonzales' testimony and his prior statements was over a matter that was "very, very collateral." On appeal, the New Mexico Supreme Court agreed with the trial court's ruling excluding the proffered evidence on the basis of privilege and ruled that "the fact that the oral history might have been communicated to the member of the parole board did not destroy the confidential nature of the communication." *State v. Ortega,* 112 N.M. at 573, 817 P.2d at 1215.

In his Petition, Ortega argues that it was prejudicial to him that he was not allowed to thoroughly cross-examine Gonzales regarding the psychological report and his prior inconsistent statements to the psychologist and that the jury was left with the false impression that Gonzales was a truthful and credible witness.

Whether or not privilege is attached to the psychological report and statements Gonzales made to the psychologist is a matter of state law.  As discussed in detail, *supra*, this Court will not disturb these evidentiary rulings unless the rulings rendered Ortega's trial so fundamentally unfair that a "denial of federal constitutional rights results."  *See Gilson v. Sirmons,* 520 F.3d at 1242. This Court agrees with the New Mexico Supreme Court's analysis and in particular agrees that the issue in controversy was over a matter that was "very, very collateral," especially considering the fact that Ortega was convicted of felony murder.  Far from finding that Gonzales was a "truthful and credible witness," the jury appears to have concluded that Gonzales actually wielded the knife during the slayings.  Ortega has failed to provide this Court with actual facts to show how his trial was fundamentally unfair based on the trial court's decision, and the record reviewed by this Court does not support such a claim, especially in light of the significant evidence against Ortega presented to the jury. That evidence includes various eyewitness testimony, identification testimony, and circumstantial evidence as detailed in the Findings and Procedural Background section, *supra*. Claim 3 of Ortega's Petition should be dismissed.

<u>Claim 6: Trial Court's refusal to allow Petitioner to reopen his case to introduce inventory sheet regarding a jacket taken from the vehicle Petitioner was driving when arrested on December 26, 1987.</u>

During Ortega's trial, a police officer testified on rebuttal that Ortega was wearing a black jacket when he was arrested on an unrelated charge of stealing a car a few days before the murders. [TR VIII, 1498-1501]. Ortega had previously denied owning a black jacket.  On cross-examination,

defense counsel elicited testimony from the police officer that he believed that a tan jacket with a furry collar had been found in Ortega's car at the time of the arrest. [TR VIII, 1502]. (The witness who had identified Ortega near the scene of the murders had testified that Ortega had been wearing a tan jacket with a furry collar.)  After the evidence was closed, the defense moved to reopen the case to offer a police inventory sheet, which showed that the only jacket taken from Ortega or the car was black. [TR IX, 1507]. The trial court denied the motion because a proper foundation had not been laid. [TR IX, 1508-1509].  On appeal, the New Mexico Supreme Court held that the trial court did not abuse its discretion and, furthermore, that the trial court did not err because the purpose of the evidence was to impeach, by extrinsic evidence, the police witness' testimony by contradiction over a collateral issue, which is rarely allowed.

Ortega admits for the first time in his federal Petition that there was a tan jacket in the car, but states that it was a woman's short style jacket which belonged to the owners of the car that he stole.  He states that the jacket was never put into booking because the owners of the car were present when he was arrested, and they drove their car home with the jacket remaining in the car.  Ortega claims that the opportunity to rebut the police officer's testimony was a violation of his due process right to a fair trial.

The admissibility of evidence in a state criminal proceeding presents a matter of state law. *See generally Vigil v. Tansy,* 917 F.2d 1277 , 1280 (10th Cir. 1990).  However, this Court must address whether the trial court's denial of Ortega's request to reopen the case to introduce the inventory sheet violated his right to a fair trial. *See Gilson v. Sirmons,* 520 F.3d at 1242.  The Court finds that it does not.  This Court agrees with the New Mexico Supreme Court's analysis discussed, *supra,* that the trial court did not abuse its discretion and did not err.  Further, given the totality of the evidence against Ortega as presented, *supra*, this Court finds that presenting an inventory sheet

30

to the jury allegedly showing that the only jacket taken was black could not overcome the significant evidence against Petitioner and that this evidence would not have influenced the outcome of the trial. Under these circumstances, this Court finds that Ortega's trial was not rendered fundamentally unfair, and Ortega did not establish that the State courts' decisions were "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. §2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d)(2). Petitioner's claim fails and it should be dismissed.

Claim 11: Trial Court's failure to order disclosure of identity of confidential informants.

Defense counsel moved to have the trial court order the state to disclose the identity of various confidential informants. [PT I, 93-131; PT 7-18-88, 7-10; TR V, 718-721]. The trial court conducted an *in camera* hearing on the motion, following which it ordered the State to disclose the identity of two of the informants. The trial court ruled that the other confidential informants need not be disclosed because there had been no showing that they would be able to give testimony relevant and helpful to Ortega or necessary to a fair determination of the issue of Ortega's guilt or innocence. [RP, 588-589]. The trial court determined that the informants' information was second- or third-hand hearsay, and nondisclosure was ordered in part out of concern for the safety of the informants. The New Mexico Supreme Court reviewed the record of the *in camera* hearing and found no abuse of discretion.

While the Supreme Court has not squarely addressed the constitutional issues regarding a state's privilege to withhold the identity of confidential informants, it has addressed the issue with regard to the supervisory power of the federal courts in federal criminal trials. In *Roviaro v. United States,* 353 U.S. 53, 77 S.Ct. 623 (1957), the Court held that the government's privilege to withhold

the identity of a confidential informant is not absolute, but must give way "[w]here the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause." *Id.* at 60-61.  The Ninth Circuit has confirmed that when disclosure would not lead to testimony or other evidence that would be of material benefit to the defense, disclosure is not required.  *United States v. Gonzalo-Beltran,* 915 F.2d 487, 489-490 (9th Cir.1990).  The petitioner must make a minimal threshold showing that disclosure would be relevant to at least one defense.  *See United States v. Sai Keung Wong,* 886 F.2d 252, 256 (9th Cir.1989)(citing *United States v. Buffington*, 815 F.2d 1292, 1299) (9th Cir.1987)).

In his Petition, Ortega claims that the disclosure of all of the confidential informants should have been allowed because "practically all the states witnesses were testifying under second and third hand hearsay." [Doc. 3, p. 11].  This statement is Ortega's sole argument in support of his claim.  Petitioner has not made the necessary minimal threshold showing that disclosure would be relevant nor material and favorable to his defense.  His claim is wholly insufficient because it is a conclusory allegation with no supporting facts or evidence.  *See Hall v. Bellmon,* 935 F.2d at 1110; *see also Ruark v. Gunter,* 958 F.2d at 319.  Ortega has once again failed to provide any showing that the trial court's refusal to order the disclosure of the identity of certain confidential informants rendered his trial so fundamentally unfair that "a denial of federal constitutional rights results," and this Court finds none.  *See Gilson v. Sirmons,* 520 F.3d at 1242.  Claim 11 of Ortega's Petition should be dismissed.

Claim 12: Trial Court's refusal to instruct jury in accordance with Petitioner's requested instructions.

Ortega claims that the trial court erred in refusing to instruct the jury on Ortega's requested instructions regarding witness credibility; bias and hostility of witness; witness interest in outcome of case; testimony of accomplices called by state; immunity of state's witness; witness using or addicted to drugs; identification testimony; and plea agreement entered into with witness or co-

defendant because the subject matter addressed in the tendered instructions was not addressed by the instructions given.  The New Mexico Supreme Court held that the trial court did not err because Ortega's tendered instructions related to credibility of witnesses and the subject matter of witness credibility was already covered by UJI Crim.14-5020, which was given to the jury.

"A habeas petitioner who seeks to overturn his conviction based on a claim of error in the jury instructions faces a significant burden." *Ellis v. Hargett,* 302 F.3d 1182, 1186 (10th Cir. 2002). Additionally, "[a]n omission ... is less likely to be prejudicial than a misstatement of the law." *Henderson v. Kibbe,* 431 U.S. 145, 155 (1977). "The significance of the omission ... may be evaluated by comparison with the instructions that were given." *Id.* at 156.

Ortega has failed to meet his burden of showing that the omission of the requested jury instructions denied him a fair trial, and this Court finds that it does not.  The subject matter of witness credibility was covered by the instruction given to the jury, and nothing in the record indicates that the fundamental fairness of the trial was undermined by the court's refusal to give additional instructions regarding witness credibility. *See, e.g., Neely v. Newton,* 149 F.3d 1074, 1085-86 (10th Cir. 1998)(affirming a district court's denial of petition for writ of habeas corpus holding that the Petitioner failed to show that the omission of a jury instruction denied her a fair trial). Petitioner's claim 12 should be dismissed.

Claims 13 and 14: Trial Court's failure to grant a mistrial based on a newspaper article regarding a bomb threat and based on a newspaper article naming Petitioner as a suspect in Arizona homicide.

On two occasions Ortega's defense counsel requested a mistrial. The first occasion followed a local newspaper article which suggested that Ortega was responsible for a bomb threat that resulted in the courthouse being evacuated during his trial. [TR IV, 545]. After the article appeared, the trial court issued a cautionary instruction to the jury that these types of incidents happen frequently and

that no inference could be drawn that Ortega, or anyone on his behalf, made the threat. [TR IV, 561].

The second occasion  followed a local newspaper article which stated that Ortega was a suspect in

another homicide in Arizona. [TR IX,1505-1506].

The trial court denied both motions for a mistrial stating, *inter alia*, that it had "continually

admonished the jury not to read anything in the newspaper about the case or watch anything on

television...." [TR IX, 1506].  Ortega appealed the trial court's decisions, and the New Mexico

Supreme Court held that the trial court did not abuse its discretion in denying the motions for a

mistrial because, *inter alia*, there was no indication that the jurors failed to follow the court's

admonitions or keep an open mind concerning the case.

In his Petition, Ortega alleges that he was prejudiced by the newspaper articles and there was

malicious intent behind the second article to hurt his case and advance the chances for success for

the D.A.'s office.

A trial court has broad discretion in determining whether or not to grant a mistrial.  *Renico*

*v. Lett,* ___ U.S. __, 130 S.Ct. 1855, 1863 (2010); *Walck v. Edmondson*, 472 F.3d 1227, 1236 (10th

Cir. 2007).  Moreover, the Court presumes that "a jury will follow an instruction ... unless there is

an overwhelming probability that the jury will be unable to follow the court's instructions, and a

strong likelihood that the effect ...would be devastating to the defendant." *Greer v. Miller,* 483 U.S.

756, 766 n.8 (1987) (internal quotation marks and citations omitted).   Ortega has failed to establish

that the trial court's decision rendered "the trial so fundamentally unfair that a denial of federal

constitutional rights results," and this Court finds that it did not. *See Gilson v. Sirmons,* 520 F.3d at

1242.  The trial court provided a cautionary instruction to the jury regarding the bomb threat and

continually admonished the jury to not read the newspapers nor watch television.  Nothing in the

record suggests that the jury ignored the court's instructions nor that Ortega was deprived of a fair

trial.  Accordingly, the Court finds that the state courts' decisions were not contrary to, or an unreasonable application of federal law, and did not constitute an unreasonable determination of the facts in light of the evidence presented.  Ortega is therefore not entitled to habeas relief on these claims.

Claim 15: Trial Court's grant of use and derivative use immunity to Gonzales.

The State sought and was granted use and derivative use immunity to Gonzales.  Defense counsel objected that the request was untimely since it was only one week prior to trial and, therefore, it would constitute a denial of Ortega's right to due process and would interfere with defense counsel's ability to adequately and effectively represent Ortega.  The trial court asked defense counsel what length of time he needed to adequately prepare, and counsel replied possibly three weeks. [PT II, 421].  The trial court then granted a three-week continuance. [RP III, 565].  The New Mexico Supreme Court found that under these circumstances, Ortega had shown no prejudice or error.

Ortega argues in his Petition that these facts show that the immunity of Gonzales should be removed and a new trial granted.[15]  This Court disagrees.  Defense was given the amount of time requested to prepare, and Ortega provides no facts, and this Court finds none, to show that the trial court's decision rendered his trial unfair. Ortega's claim should be dismissed.

Claim 16: Trial Court's admission of autopsy photographs.

Ortega claims that the trial court permitted numerous photographs of the decedents that would

---

[15]Ortega argues for the first time in his federal Petition that the trial court erred in granting immunity to Gonzales because Gonzales was the actual killer and the court allowed the state to use perjured testimony to convict Ortega. Ortega's claim is not well taken because it was not presented to the state courts and because it is a conclusory allegation with no supporting facts or evidence.  *See Hall v. Bellmon,* 935 F.2d at 1110; *see also Ruark v. Gunter,* 958 F.2d at 319.

arouse prejudices and passions of the jury and that the photographs were not illustrative of any medical principle.  Once again, Petitioner fails to argue or show this Court how these allowed photographs rendered his trial so fundamentally unfair that "a denial of federal constitutional rights results." *See Gilson v. Sirmons,* 520 F.3d at 1242.

At trial, defense counsel objected to the admission of the photographs arguing that the photographs were of such an offensive nature that they would arouse the prejudices and passions of the jury and that the trial court abused its discretion in admitting them.  The trial court held an *in camera* hearing with the forensic  pathologist. [TR V, 1030-1037]. The court admitted only those it found probative of issues in the case and "weed[ing] out the ones that are surplus, ... so we don't get any bloodier than we have to...." [TR V, 1030].  The New Mexico Supreme Court found no abuse of discretion under the above facts.  This Court agrees with the New Mexico Supreme Court's analysis and further finds nothing in the record to suggest that the admission of these photographs rendered the trial fundamentally unfair.  Accordingly, this claim should be dismissed.

Claim 17: Trial Court's failure to grant a mistrial based on Gonzales' testimony that Petitioner had threatened him.

In Claim 17, Ortega abandons his claim that the trial court erred by failing to grant a mistrial based on Gonzales' testimony that Ortega had threatened him as Ortega acknowledges  in his Petition that Gonzales' statement was outside the presence of the jury.  Therefore, Claim 17 should be dismissed.

Claim 18: Cumulative Error

Ortega asks this Court to reverse his conviction because the cumulative effect of the errors which occurred at trial was so prejudicial that he was deprived of a fair trial.  Petitioner fails to inform the Court as to which alleged errors he is referring and fails to present any legal or factual

support for his claim.

The law is clear that "the cumulative effect of two or more individually harmless errors has the potential to prejudice a defendant to the same extent as a single reversible error." *Duckett v. Mullin,* 306 F.3d 982, 992 (10th Cir. 2002) (quoting *United States v. Rivera,* 900 F.2d 1462, 1469 (10th Cir. 1990). A cumulative error analysis aggregates all the errors that individually have been found to be harmless and analyzes whether their cumulative effect on the outcome of the trial is such that collectively they are not harmless. *United States v. Toles,* 297 F.3d 959, 972 (10th Cir. 2002) (citation omitted). However, "[c]umulative error analysis applies where there are two or more actual errors; it does not apply to the cumulative effect of non-errors." *Moore v. Reynolds*, 153 F.3d 1086, 1113 (10th Cir. 1998).

Even though Ortega fails to set forth which errors he believes in the aggregate deprived him of a fair trial, for purposes of the cumulative error analysis, this Court will assume, arguendo, that the errors are those alleged in his claim numbers 1 through 16. This Court has found no error, harmless or otherwise, by the state courts. Therefore, the cumulative error analysis is not applicable. *See Moore v. Reynolds,* 153 F.3d at 1113. Ortega's claim is without merit, and habeas relief on this ground should be denied.

## PETITIONER'S REQUEST FOR COUNSEL

Ortega requests for the third time that this Court provide him with counsel. [Doc. 36, pp. 2-3; 83, n. 12; 88, 96]. The Court has broad discretion to appoint counsel for indigents under 28 U.S.C. § 1915(e), and its denial of counsel will not be overturned unless it would result in fundamental unfairness impinging on due process rights. *Long v. Shillinger*, 927 F.2d 525, 527 (10th Cir. 1991). In determining whether to appoint counsel, the court should consider a variety of factors, including the merits of the litigant's claims, the nature of the factual issues raised in the claims, the litigant's

ability to present his claims, and the complexity of the legal issues raised by the claims. *Id*.

The Court has again considered the factors noted above, and sees no basis for the appointment of counsel. Accordingly, the Court recommends that Ortega's request for appointment of counsel be denied.

## CONCLUSION AND RECOMMENDED DISPOSITION

Petitioner has failed to show that any state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. §2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d)(2). For this reason and other reasons set forth, *supra,* this Court recommends that the Petition for Writ of Habeas Corpus be denied on the merits and dismissed with prejudice. This Court further recommends that Petitioner's request for appointment of counsel be denied.

## NOTIFICATION

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN FOURTEEN (14) DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. §636(b)(1). A party must file any objections with the Clerk of the District Court within the fourteen (14) day period if that party wants to have appellate review of the Proposed Findings and Recommended Disposition.  If no objections are filed, no appellate review will be allowed.**

_____
**W. DANIEL SCHNEIDER**
**United States Magistrate Judge**